# EXHIBIT A

# NAMED PLAINTIFF AND OPT-IN SETTLEMENT AGREEMENT, RECEIPT, AND RELEASE

Named Plaintiff April Wallace ("Plaintiff") and Defendant Accurate Energetic Systems, LLC ("Defendant" or "AES"), (collectively referred to as the "Parties") hereby enter into this Named Plaintiff and Opt-In Settlement Agreement, Receipt, and Release (hereinafter referred to as the "Agreement"), to resolve all wage and hour-related claims of any type and kind by Plaintiff and the Opt-Ins Plaintiffs in the case as of September 17, 2024, jointly and individually, against Defendant and Released Parties (as defined/referenced in Paragraphs 3, 4, and 5 below), jointly and individually.

WHEREAS, Plaintiff April Wallace filed an action in the U.S. District Court for the Middle District of Tennessee, captioned *April Wallace, Individually, and On Behalf of Herself and Others Similarly Situated v. Accurate Energetic Systems, LLC,* Case No. 3:24-cv-00151, wherein she asserted various claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); arising out of Defendant's alleged failure to pay her and other hourly paid production employees for alleged work performed off-the-clock (hereinafter referred to as the "Litigation");

WHEREAS, Defendant thereafter filed its Answer adamantly denying the allegations in the Litigation, that they committed any wrongdoing or violated any state, federal, or common law, that they violated the FLSA as alleged in the Litigation or otherwise, that any individuals are similarly situated to Plaintiff, that any notice should be sent out, that Plaintiff and alleged putative class members are entitled to any additional overtime, minimum wage, or other compensation or relief, and that Plaintiff and the alleged putative class members were improperly paid. Defendant also asserted numerous affirmative and other defenses in its Answer;

WHEREAS, during the pendency of the Litigation, four (4) individuals, including Plaintiff, filed consents to join the Litigation. The consents to join provide, in part, that each of the Opt-In Plaintiffs ("the Opt-Ins") "authorize the prosecution of the . . . action to recover unpaid wages on my behalf by [Wallace], to make decisions on my behalf concerning the litigation, the method, and manager of conducting this litigation . . . and all other matter pertaining to this lawsuit;"

WHEREAS, the Parties engaged in settlement negotiations amongst themselves over the course of several weeks. After extensive arms'-length negotiations, the Parties were ultimately able to reach a settlement of the claims of Plaintiff and the Opt-Ins, which is a fair and adequate resolution of a bona fide dispute. The terms of the settlement are set forth in this Settlement Agreement and Release. The Court has not authorized notice of this lawsuit; and

WHEREAS, Defendant specifically denies all of the allegations in the Litigation and any and all wrongdoing, liability, and damages of any kind to anyone with respect to the alleged facts or causes of action asserted in the Litigation and state that Plaintiff, Opt-Ins, and all putative class members were paid in accordance with all applicable laws, but nonetheless, without admitting or conceding any wrongdoing, illegality, liability, or damages whatsoever or the propriety of collective action status for purposes of continued litigation or trial, has voluntarily agreed to settle the Litigation on the terms and conditions set forth in this Agreement for the sole purpose of avoiding the continued burden, expense, and disruption to business;

WHEREAS, Plaintiff and Defendant now wish to amicably resolve any and all claims Plaintiff may have against Defendant and their related entities and parties, all claims set forth in the Litigation, all claims set forth in the Agreement, all claims released in the Agreement, and all claims as set forth in the general release set forth in this Agreement; and

WHEREAS, the Parties now wish to amicably resolve their disputes and fully and finally end the Litigation without the need for continued litigation.

NOW THEREFORE, in consideration of the covenants and promises set forth below, and for good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

1.      Defendant agrees to pay the total amount of Sixteen Thousand Two Hundred Dollars and Zero Cents ($16,200.00) ("Settlement Sum"), the receipt and sufficiency of which is hereby acknowledged. The Settlement Sum payment shall be made within thirty (30) business days after the last of the following three events occur: (i) the Plaintiff and her attorneys execute this Agreement; (ii) the Court dismisses the Litigation with prejudice as set forth herein; and (iii) all necessary tax forms are received by Defendant, including forms W-9. The Settlement Sum shall be split, per each Plaintiff and Opt-In, into two types of checks: one check less applicable state, federal and local taxes, for alleged unpaid wages, which payment shall be reported on a Form W-2 (hereinafter, "Payroll Check") and a second check with no taxes withheld, for alleged liquidated damages, which payment shall be reported on a Form 1099, if required by law (hereinafter, "Non-Payroll Check"). The amounts shall paid be as follows:

(a)      The total amount of two thousand dollars ($2,000), payable to Plaintiff April Wallace in two (2) separate checks as follows: one (1) Payroll Check in the gross amount of $1,000 and one (1) Non-Payroll Check in the amount of $1,000;

(b)      The total amount of one thousand five hundred dollars ($1,500) payable to Eunice Hughes in two (2) separate checks as follows: one (1) Payroll Check in the gross amount of $750 and one (1) Non-Payroll Check in the amount of $750;

(c)      The total amount of five hundred dollars ($500) payable to Jeffrey McNabb in two (2) separate checks as follows: one (1) Payroll Check in the gross amount of $250 and one (1) Non-Payroll Check in the amount of $250;

(d)      The total amount of one thousand dollars ($1,000) payable to Jeremy Gilbert in two (2) separate checks as follows: one (1) Payroll Check in the gross amount of $500 and one (1) Non-Payroll Check in the amount of $500; and

(e)      The total amount of eleven thousand two hundred dollars ($11,200) payable to Jackson, Shields, Yeiser, Holt, Owen & Bryant, in one (1) Non-Payroll Check, for costs and attorneys' fees in connection with the Litigation, which shall be reported on Forms 1099 both to the Plaintiff and Opt-Ins, along with their attorneys.

2

The Parties agree that if Defendant is unable to facilitate the payment above and/or issue the above checks within thirty (30) business days due to checks being improperly issued or the necessary supplies to insert the waiver language not being timely received, that such failure is not to be considered a breach of this Agreement as long as payment is made within a reasonable time period, not to exceed an additional ten (10) business days, following the satisfaction of all conditions precedent to payment of the Settlement Sum set forth in Paragraph 1.

2.     Plaintiff acknowledges that the funds paid herein by and/or on behalf of Defendant include a compromise settlement of all claims of Plaintiff's and Opt-Ins' against Defendant and Released Parties (as defined below), including claims for back wages and liquidated damages. Therefore, applicable taxes have been withheld from the Payroll Checks described in Paragraphs 1(a) through (d). No deductions have been made for Social Security or income taxes from all remaining Non-Payroll Checks described in Paragraphs 1(a) through (e). At the appropriate time, the respective entity(ies) that issued the Non-Payroll Checks set forth in Paragraphs 1(a) through (d) will issue to Plaintiff and the Opt-Ins IRS Forms 1099. Plaintiff and Opt-Ins shall indemnify and hold Defendant and Released Parties harmless from any and all liability which may be asserted against them by the United States of America or any state or local municipalities for Social Security, income tax, or any other tax claimed to be owed by Plaintiff and Opt-Ins, jointly and individually, in connection with payment of the Settlement Sum, together with any interest and penalties thereon. The entity that issues the check for the attorneys' fees and cost portion of the Settlement Sum will also issue a Form(s) 1099 to Jackson, Shields, Yeiser, Holt, Owen & Bryant for the payment described in Paragraph 1(e). Plaintiff acknowledges and agrees that Defendant made no representations to her regarding the tax consequences of any amount received pursuant to this Agreement. Plaintiff agrees to pay all federal or state taxes, if any, which are required by law to be paid with respect to this Agreement.

3.     In consideration of the payment of Plaintiff's portion of the Settlement Sum, the receipt and legal sufficiency of which is hereby acknowledged, Plaintiff releases and forever discharges for herself, her heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, jointly and individually, ("Releasing Parties") Defendant Accurate Energetic Systems, LLC, and its respective past, present, and future parent companies, subsidiaries, groups, divisions, successors, assigns, related companies, affiliated organizations, officers, directors, board members, partners, members, employees, representatives, owners, agents, lessees, managers, shareholders, underwriters, insurers, re-insurers, and legal counsel, jointly and individually, ("Released Parties") who might be or might hereafter become liable, from any and all charges, claims, demands, suits, liens, debts, damages, monies, penalties, attorneys' fees, and causes of action of whatever nature, in law or in equity, whether growing out of tort, contract, quasi-contract, statute or otherwise, including all claims under the laws of the United States, laws of any state, common law, any other regulations and ordinances or laws which may have afforded Plaintiff a cause of action for wages, salary, bonus, vacation pay, compensatory damages, punitive damages, liquidated damages, attorney's fees, penalties, interest, and/or costs, which Plaintiff has ever had or now has and that has or could have been asserted in the Litigation. In addition, Plaintiff agrees to voluntarily dismiss, with prejudice, the Litigation, after the Parties obtain Court approval of this Agreement and this settlement.

**Error! Unknown document property name.**

Additionally, Plaintiff represents and warrants that other than what she has claimed in the Litigation, she has received all wages and benefits to which she was entitled during her employment, including, but not limited to, minimum wages, overtime wages, liquidated damages, sick leave, PTO, and any other wages and benefits governed by the FLSA, state and local wage and hour laws, or any other common law wage claim under any theory, including, but not limited to, unjust enrichment, quantum meruit, or breach of contract.

4.     Upon the Court's approval of this Agreement, Plaintiff and all Opt-Ins shall, individually and on behalf of himself/herself and his/her heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, jointly and individually, fully, forever, irrevocably, and unconditionally release, remise, and discharge Defendant and Released Parties, jointly and individually, from any and all known and unknown, and whether asserted or unasserted, suits, actions, causes of action, claims, demands, damages, penalties, and attorneys' fees against the Defendant and Released Parties, jointly and individually, based on all federal, state, and local claims, including but not limited to: all FLSA claims; all state and local law wage and hour claims arising out of their work for Defendant and Released Parties, jointly and individually, including in all states where they performed work for Defendant and any Released Parties; all wage and hour and other related common law claims; all claims for interest, liquidated damages, statutory damages, penalties, attorneys' fees, costs, and expenses; all claims asserted or that could have been asserted in the Litigation; all claims for unpaid wages; all claims for overtime; all improper regular rate calculation claims; all weighted average claims; all off-the-clock claims; all misclassification claims; all unpaid travel, meal, and rest break claims; all premium pay claims; all wage- and pay-related notice claims; all improper and retroactive deduction and reduction claims; all minimum wage claims; all recordkeeping claims; and all failure to pay time and a half for all hours worked over 40 claims, if any; and all claims that could arise under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.*; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act; the Employee Retirement Income Security Act; Section 1981 of U.S.C. Title 42, the Worker Adjustment and Retraining Notification Act; the Older Worker Benefit Protection Act; the National Labor Relations Act; the Families First Coronavirus Response Act;  the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.*; the Tennessee Disability Act, T.C.A. § 8-50-103 *et seq.*; the Equal Pay Act, 29 U.S.C.  § 206 *et seq.*; the Tennessee Equal Pay Act, T.C.A. § 50-2-201 *et seq*; the Tennessee Public Protection Act, T.C.A. § 50-1-304; any other federal, state, or local law; or any contract.  The aforementioned waiver and release shall relate back to the fullest extent of each and every applicable federal, state, and local law statutes of limitations and continue through the date of entry of the dismissal of the Litigation.

Each settlement check issued to the Opt-Ins will contain language similar the following: "FINAL RELEASE OF CLAIMS: On behalf of my heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, I hereby knowingly and voluntarily, irrevocably and unconditionally, forever and fully release and covenant not to sue Accurate Energetic Systems, LLC, and  their past, present, and future owners,   parent companies, divisions, subsidiaries, affiliates, trustees, predecessors, successors, transferees, assigns, insurers, officers, directors, members, employees, agents, and representatives from/for all claims that I have or could have had as a result of working for the

4

company(ies) or that were alleged or could have been alleged under the operative complaint in the Litigation captioned *April Wallace, Individually, and On Behalf of Herself and Others Similarly Situated v. Accurate Energetic Systems, LLC,* Case No. 3:24-cv-00151. These claims include, but are not limited to, the FLSA claims asserted under the alleged facts of the operative complaint and any and all state law and common law claims that could have been asserted under the alleged facts of the operative complaint." If it is not feasible for the above language to be placed on the checks, counsel for the Parties will agree to other language.

5. As additional consideration for her respective portion of the Settlement Sum referenced in this Agreement, Plaintiff expressly agrees that she will not apply for or accept employment, placement, or assignment with Defendant or their past, present, and future parent entities, successor entities, or related entities, including those entities set forth in Paragraph 3, at any time in the future. Plaintiff separately waives any and all rights she may have under any contract, law, or other source of rights to employment, placement, or assignment with Defendant and/or their past, present, and future parent entities, successor entities, or related entities, and it is her intention to withdraw forever from the prospective pool of applicants seeking employment, placement, or assignment with such entities. Plaintiff acknowledges and agrees that should she apply and accept employment, placement, or assignment with such entities, intentionally or inadvertently, at any time in the future, the existence of this Agreement shall be grounds for immediate termination from any such future employment, placement, or assignment. Plaintiff agrees and acknowledges that she is not waiving claims or rights that she may have after the execution of this Agreement, but that she has contractually agreed not to apply for or accept employment, placement, or assignment as provided in this Agreement, and this Agreement shall constitute a complete bar to any claim she may have should she apply for employment, placement, or assignment with any such entities in the future and not be hired or be hired and subsequently discharged.

6. Plaintiff and the Opt-Ins each release all claims, as more specifically described in Paragraphs 3 through 5, against Defendant and Released Parties willingly, freely, knowingly, without duress and with the informed advice of legal counsel.

7. Plaintiff acknowledges and agrees that this Agreement fully resolves all claims that were asserted, or could have been asserted, in the Litigation and that the Settlement Sum amounts paid to her and the Opt-Ins as and for the claims asserted in the Litigation more than covers her/Opt-Ins' individual and respective calculation of damages and that she had access to and reviewed sufficient data to determine her/Opt-Ins' respective potential damages in the Litigation. Plaintiff acknowledges that as a result of payment of the Settlement Sum provided for by this Agreement, she/Opt-Ins will have each been paid more than all wages due, including overtime and minimum wages, for all hours worked while employed by Defendant, including but not limited to, payment for all hours worked, including overtime and minimum wages, plus liquidated damages, and attorneys' fees. Plaintiff represents, acknowledges, and agrees that she has full authority, permission, and power to settle the Litigation on behalf of herself and all the Opt-Ins, to agree to the release of claims on behalf of herself and all the Opt-Ins and to bind all the Opt-Ins to the same, and to enter into this Agreement on behalf of herself and the Opt-Ins.

**Error! Unknown document property name.**

8.     As part of the settlement and this Agreement, Plaintiff and the Opt-Ins waive any claim for equitable or legal tolling of the statute of limitations under the FLSA, and any state law equivalent that might otherwise arise during the pendency of the Litigation.

9.     To the fullest extent permissible by law, Plaintiff agrees that she will not initiate or in any way participate in any wage and hour action, litigation, arbitration, or settlement, other than as set forth herein, and that in the event she does so, she will be considered to have breached this Agreement, and, as such, she will be responsible for any attorneys' fees and costs associated with Defendant's or Released Parties' defense of the same to the fullest extent permissible by law. Finally, to the fullest extent permissible by law, Plaintiff contractually agrees that in the event she violates this Paragraph 9, the respective amounts of the Settlement Sum paid to her under this Agreement will be offset from any payments, awards, or judgments associated with any such action, litigation, arbitration, or settlement. However, nothing in this Paragraph is intended nor shall it be interpreted to limit or prevent Wallace from exercising her rights under the National Labor Relations Act or as set forth in Paragraph 10 below.

10.    Plaintiff represents, warrants, and agrees that other than the Litigation set forth herein, she has not, nor has anyone on her behalf, including but not limited to Releasing Parties, filed or agreed to file on behalf of her or on behalf of anyone else a lawsuit, grievance, or any other legal or administrative action as to any matter based upon, arising out of, or related to compensation during her employment with Defendant and/or Released Parties, jointly or individually.

Plaintiff understands, however, that this Release does not affect her right to file a charge with or to participate as a witness in an investigation or proceeding conducted by the EEOC, NLRB, DOL, DOJ, SEC, or other administrative agency.  Plaintiff agrees, however, that she will not in any way receive a financial benefit, including monetary recovery and/or reinstatement, from a lawsuit or settlement related to the rights and claims she now gives up, whether the lawsuit is filed or settlement is reached by the EEOC, NLRB, or anyone else.  Nothing in this Agreement or this Paragraph is intended nor shall it be interpreted to limit or prevent Plaintiff from engaging in protected concerted activity or exercising their right to file or participate in the investigation of a charge brought under the National Labor Relations Act (NLRA).

11.    It is recognized and agreed that this settlement and the Agreement is being made purely on a compromise basis and that no party admits liability to the other or to any other person whatsoever.  It is further acknowledged and agreed that Plaintiff and the Opt-Ins are not to be considered prevailing parties for any purposes.

12.    The Parties warrant that no representation, promise, or inducement has been offered or made to induce any party to enter into this Agreement other than the promises set forth in the Agreement. Further, other than as stated herein, this Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection herewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

13.    Plaintiff warrants she has 100% ownership of the claims she is waiving through this Agreement and that she has complete legal authority and capacity to enter into this Agreement and

6

that she is doing so knowingly and voluntarily without coercion or duress. This Agreement shall benefit and bind the parties, her representatives, heirs, and successors.

14. Any Plaintiff or Opt-Ins who fails to cash their settlement checks are bound by the release language contained in the Agreement and any related documents. In the event a check is not cashed, the Parties' respective counsel shall confer with one another to determine whether the funds may be delivered to a state unclaimed property fund in the state in which the individual worked or may be handled in a similar manner by an applicable state law in which the individual worked and, if so, will make reasonable efforts to handle the funds accordingly.

15. Plaintiff's counsel agrees they may not make any public writing or comment, make or have any communications to or with the press or media, or make any form of advertising or public announcement, utilize any form of social media or website, or issue any press release or media release regarding the terms of the settlement or this Agreement, make and reference to the settlement, this Agreement, or the Litigation on their website or social media (even if it does not mention Defendant or any of the Released Parties entity by name), or reference/use settlement information or this Agreement in any court filings.

16. Plaintiff's counsel agrees to permanently take down and remove any postings on any and all websites, social media, and other paper and electronic platforms soliciting individuals who currently work or formerly worked at AES and to not solicit any such employees in the future. Furthermore, Plaintiff's counsel agrees to permanently take down/remove any postings on any and all websites, social media, and other paper and electronic platforms soliciting individuals who currently or formerly worked at any AES owned entity, in whole or in part, and to not solicit any such employees in the future. Plaintiff's counsel affirmatively states and agrees that they have removed any postings on any websites and other social media or paper media/platforms about individuals who currently or formerly worked at AES or about any AES entity.

17. Plaintiff agrees she will not make any verbal, electronic or written comments that are defamatory or disparaging (i.e., recklessly or maliciously untrue, or which are made with knowledge of their falsity, or with reckless disregard for their truth or falsity) concerning AES, its directors and officers, and its employees, to any person or entity who is not a party to this Agreement. Plaintiff further agrees to remove any current negative online postings she has made about AES, its directors and officers, and/or its employees, if any. Nothing in this Agreement or this Paragraph is intended nor shall it be interpreted to limit or prevent Plaintiff from engaging in protected concerted activity or exercising her right to file or participate in the investigation of a charge brought under the National Labor Relations Act.

18. If, for any reason whatsoever, any one or more of the provisions of this Agreement shall be held or deemed to be inoperative, unenforceable, or invalid by a court of competent jurisdiction after the Court approves this Agreement and the settlement, such circumstances shall not have the effect of rendering such provision invalid in any other case or rendering any other provisions of this Agreement inoperative, unenforceable, or invalid. It is the intention of the Parties that if any term or provision of this Agreement is capable of two constructions, one of which would render the term or provision void and the other of which would render the term or provision valid, then the term or provision shall have the meaning that renders it valid. In addition, nothing in this

7

Agreement is intended to nor shall it be interpreted to explicitly or implicitly limit rights to engage in protected concerted activity under the National Labor Relations Act (NLRA). Accordingly, the severability under this Paragraph specifically includes any portion of this Agreement that violates the NLRA.

19.     This Agreement shall in all respects be interpreted, enforced, and governed under federal law to the extent federal law preempts state law and otherwise shall be interpreted, enforced, and governed by the laws of the State of Tennessee, without regard to that state's choice of law provisions. The Parties also hereby submit to the jurisdiction of the United States District Court for the Middle District of Tennessee for all purposes relating to the review, approval, and enforcement of the terms of this Agreement.

20.     This Agreement has been fully and fairly negotiated by the attorneys for Plaintiff and the Opt-Ins and the attorneys for Defendant and is a fair and reasonable resolution of a bona fide dispute. This Agreement is the work product of all Parties and shall not be construed as "drafted by" any single party or construed as "against" any party.

21.     This Agreement may be executed in identical counterpart copies, each of which shall be an original, but all of which taken together shall constitute one and the same instrument. A facsimile, emailed, or scanned copy of any party's signature will be deemed as legally binding as the original signatures. In proving this Agreement, it shall not be necessary to produce or account for more than one such counterpart executed by the party against whom enforcement is sought.

22.     Plaintiff warrants and represents that she is over the age of eighteen (18) and she does not suffer from any legal disabilities or mental/physical disabilities that would disable or incapacitate her, even in part, from executing this Agreement. The Parties executing this Agreement further warrant and represent that they have not taken any drug or medication prior to the execution of this Agreement that would prevent them from understanding and agreeing to the terms herein.

23.     In the event any provision of this General Release is deemed to be invalid or unenforceable by any court of competent jurisdiction after the Court approves the Agreement and settlement and such provision cannot be modified or restricted so as to be valid and enforceable, then that provision shall be deemed excised from the General Release and the remaining provisions of the General Release shall remain in effect and be construed and enforced as if such provision had not originally been contained herein. In addition, nothing in this Agreement is intended to nor shall it be interpreted to explicitly or implicitly limit rights to engage in protected concerted activity under the National Labor Relations Act. Accordingly, the severability under this Paragraph specifically includes any portion of this Agreement found by a court or other entity with competent jurisdiction to violate the National Labor Relations Act.

24.     The Parties agree that the settlement and this Agreement are conditioned on Court approval. The Parties agree that either Party can back out of the settlement and this Agreement if the Court does not approve all of the terms of the settlement and this Agreement. The Parties agree, however, that if one or both Parties back out of the settlement and this Agreement as a result of Court approval not being granted, that the Parties will engage in additional settlement discussions within thirty (30) days to determine if the Parties can reach an amicable resolution.

8

24. The Parties agree that the settlement and this Agreement are conditioned on Court approval. The Parties agree that either Party can back out of the settlement and this Agreement if the Court does not approve all of the terms of the settlement and this Agreement. The Parties agree, however, that if one or both Parties back out of the settlement and this Agreement as a result of Court approval not being granted, that the Parties will engage in additional settlement discussions within thirty (30) days to determine if the Parties can reach an amicable resolution.

25. This Agreement and the settlement are contingent upon the dismissal with prejudice of the Litigation, with each party to bear their own attorneys' fees and costs, within five (5) days of an order approving the settlement and this Agreement in its entirety. The Parties agree that they will submit an order to the Court dismissing the Litigation with prejudice, in a manner and form agreed to in advance by Defendant's counsel.

[SIGNATURES ON FOLLOWING PAGE]

SIGNED on the dates entered by the signatures of the respective Parties.

IN WITNESS THEREOF, the Parties have executed this Agreement by their signatures below.

_____          10/01/2024
APRIL WALLACE                              _____
                                           Date

_Accurate Energetic Systems, LLC_          10/17/2024
ACCURATE ENERGETIC SYSTEMS, LLC            _____
By: _Wendell Stinson_                      Date
Title: _President_

CLASS COUNSEL'S SIGNATURE BELOW IS EVIDENCE OF HIS & HIS FIRM'S AGREEMENT TO BE BOUND BY THE TERMS SET FORTH IN PARAGRAPHS 15 & 16.

_____          10-1-2024
J. Russ Bryant                             _____
Jackson, Shields, Yeiser, Holt, Owen & Bryant   Date
*Attorney(s) for Plaintiff and Opt-Ins*

J. Russ Bryant and Jackson, Shields, Yeiser, Holt, Owen & Bryant, hereby release all attorney liens that they either have, or could have claimed, as related to Plaintiff's and Opt-Ins' claims involving Accurate Energetic Systems, LLC, and their related companies and subsidiaries.

_____          $10-1-2024$
J. Russ Bryant                             _____
Jackson, Shields, Yeiser, Holt, Owen & Bryant    Date
*Attorney(s) for Plaintiff and Opt-Ins*

# EXHIBIT B